## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY
AND ETHICS IN WASHINGTON
P.O. Box 14596
Washington, DC 20044

      Plaintiff,

        v.

UNITED STATES DEPARTMENT
OF JUSTICE
950 Pennsylvania Ave. NW
Washington, DC 20530,

UNITED STATES DEPARTMENT
OF THE TREASURY
400 Maryland Ave. SW
Washington, DC 20202, and

INTERNAL REVENUE SERVICE
811 Vermont Ave. NW
Washington, DC 20420

      Defendants.

Case No.

## **COMPLAINT**

1. In an act of brazen self-dealing unprecedented in American history, on May 18, 2026 President Donald Trump and his administration executed a collusive agreement to resolve *Trump v. IRS*, No. 26-cv-20609 (S.D. Fla.), a lawsuit Trump and his family filed against two federal agencies he controls seeking at least $10 billion in damages.

2. The purported "settlement" created a slush fund designed to funnel $1.776 billion in taxpayer dollars to claimed victims of what the President considers "lawfare" and government "weaponization" ("the Slush Fund"). *See* Settlement Agreement, Section IV,

https://perma.cc/8HSB-TZLN. Potential claimants included those who attacked the Capitol on January 6, 2021.

3.      In a May 19, 2026 addendum to the Agreement, President Trump's former criminal defense attorney, now serving as the Acting Attorney General, agreed to release President Trump, his family, and his affiliates from liability for any wrongdoing, "whether known or unknown," relating to any claims that could have been made against them in the *Trump v. IRS* case, that result from "lawfare" or "weaponization" or any matters pending or that could be pending before any federal agency, including the Internal Revenue Service. *See* Addendum, Section C, https://perma.cc/KZ3K-DYHK. The Acting Attorney General has since stated that the Department of Justice (DOJ) will not pursue the Slush Fund, but that it will leave in place the broad immunity agreement that shields the President, his family and associated business entities from virtually any federal claims against them.[1]

4.      The purported settlement is the result of the Defendants' manipulation of the legal process intended to achieve President Trump's personal and political objectives—funneling taxpayer funds to political allies and obtaining broad immunity for the President and his family from any claims by the federal government—that could not be accomplished in a lawful fashion. Nor could they be accomplished in litigating the deeply flawed case itself, as the purported settlement terms bear no legal or logical relationship to claims brought in *Trump v. IRS*.

5.      On July 13, 2026, Judge Kathleen M. Williams issued a lengthy opinion in *Trump v. IRS*, No. 26-20609-CV, 2026 WL 2015525 (S.D. Fla. July 13, 2026). In it, Judge Williams held that the adverseness required by the Constitution to confer jurisdiction on federal courts did not

---

[1] Glenn Thrush & Alan Feuer, *Blanche Says Justice Dept. Won't Proceed With Trump's $1.8 Billion Fund*, New York Times, June 2, 2026, https://tinyurl.com/2y77war9.

exist in the case. *Id*. at *6-7. The Court held that the *Trump* plaintiffs and Defendants were not adverse, because the President wields constitutional and statutory control over the Secretary of the Treasury and the Commissioner of the Internal Revenue Service ("IRS"). *Id*. at *8-9.

6.     Moreover, Judge Williams observed that Executive Order 14215 (Feb. 18, 2025) precluded any employee of the executive branch, including the Defendants, from advancing an interpretation of law as the position of the United States contrary to that of the President and Attorney General. *Trump*, 2026 WL 2015525 at *10 (citing E.O. 14215, § 7). This policy ensured the lack of adversariness in *Trump v. IRS*. *Id.* at *10, 12.

7.     Judge Williams also held that the conduct of attorneys and executive branch actors in *Trump v. IRS* underscored the lack of adversariness between the parties and the improper motive of the *Trump* plaintiffs in settling the case. *Id. Trump*, 2026 WL 2015525 at *12-17 (discussing the roles and potentially unethical behavior of Daniel Epstein, Stanley Woodward and Todd Blanche). Acting Attorney General Blanche's subsequent repudiation of the Slush Fund reflected his view, according to the Court, that he could speak for both sides of this dispute, because the purported agreement would have required written consent from the *Trump* plaintiffs to abandon the fund. *Id*. at *16. This supported the Court's conclusion that "the Lead Plaintiff and the Government are one, a fully realized unitary interest." *Id*. at *17. After all, President Trump acknowledged that "he may have to work out a settlement with himself."[2]

8.     Because the *Trump* plaintiffs controlled the Defendants and, thus, control the litigation, the Court determined "that Plaintiffs improperly employed this lawsuit to justify a particular award in this matter—access to taxpayer funds and exemption from audits and other investigations—which was accomplished by leveraging control over Defendants." *Trump*, 2026

---

[2] Forbes Breaking News, *'I'm Supposed To Work Out A Settlement With Myself': Trump Addresses Lawsuit Against IRS* (YouTube, Feb. 1, 2026), https://tinyurl.com/4p324c59.

WL 2015525 at *8. The Court further held that "Defendants' actions (or … inaction), as directed by the DOJ, and the subsequent 'resolution' of this lawsuit leads the Court to conclude the Parties' interests were 'one and the same.'" *Id*. at *11-12 (citation omitted).

9. As a result, the Court determined that the:

facts lead to the inexorable conclusion that the "settlement" terms, the individuals who signed the "settlement" as well as the putative beneficiaries of the "settlement," demonstrate a shared, unitary interest. And the unilateral revision and renunciation of the "Fund" component of the "settlement" demonstrate the fact that all Parties were aligned, and ultimately, undifferentiated. This action was never about a party seeking judicial resolution of a legal issue or a factual dispute. The nature of the suit itself and the conduct of the Parties and counsel from its filing make plain that this was an attempt to use the Court to provide some legitimacy to an agreement to confer immunity to people and entities affiliated with the President and to earmark billions of dollars from American taxpayers to redress grievances not defined in the law. The President may be the functional "dominus litus" of the Executive Branch, but as a party to a civil suit, he, as well as all the parties and lawyers before a court, are bound by the rules. Ensuring that our courts are used only for the express purpose created by the Constitution is the obligation of every judge and an obligation that this Court must discharge in light of the matter before it.

*Trump*, 2026 WL 2015525 at *25.

10. The Court concluded that the lawsuit was filed for an improper purpose in violation of Fed. R. Civ. P. 11. *Trump*, 2026 WL 2015525 at *18-20. Judge Williams referred plaintiffs' attorney Fernando Brito to the Florida Bar for a determination as to whether any disciplinary actions are appropriate. *Id*. at *21. The Court ordered that any applications from plaintiffs' attorney Daniel Z. Epstein for *pro hac vice* admission in the U.S. District Court for the Southern District of Florida be denied for one year or until further order of the Court, *id*., and prohibited the parties from referring to the settlement agreement or using it, offering it, admitting it, or citing it in any judicial, administrative or other official proceeding. *Id*.

11. Judge Williams also held that the Court had inherent authority to issue sanctions to protect the integrity of judicial proceedings. *Trump*, 2026 WL 2015525 at *22-24. Finding that the government had acted in bad faith, *id.* at *24, the Court permitted certain *amici* to seek

4

attorney's fees, *id.* at *24 and ordered that the Clerk of Court to transmit the opinion and order to the State Bar of New York, where Acting Attorney General Todd Blanche is member and to the District of Columbia Bar, where Associate Attorney General Stanley Woodward is a member. *Id*.

12.     On May 12, 2026, Plaintiff Citizens for Responsibility and Ethics in Washington (CREW) filed Freedom of Information Act ("FOIA") requests with the Department of Justice ("DOJ"), Department of the Treasury ("Treasury"), and IRS seeking, *inter alia*, communications between the parties leading to the "settlement" in order to reveal the process resulting in this unlawful abuse of the judicial process.

13.     In violation of FOIA, none of the Defendants made determinations on CREW's requests within the statutorily required periods.

14.     CREW now seeks an order directing the Defendants to immediately begin searching for, processing and disclosing all non-exempt records responsive to its requests.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1331, 2201, and 2202.

16.     Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## PARTIES

17.     Plaintiff CREW is a non-partisan, non-profit government watchdog organization committed to protecting the rights of citizens to be informed about the activities of government officials and agencies and to ensuring ethics, transparency, and integrity in government. To advance its mission, CREW uses a combination of research, litigation, and advocacy. As part of its research, CREW routinely uses government records made available to it under FOIA, the Federal Advisory Committee Act, and other federal laws, and widely disseminates those records

to the public.

18.    Each Defendant is an agency within the meaning of 5 U.S.C. § 552(f)(1), has possession and control of the requested records, and is responsible for fulfilling CREW's FOIA requests.

**STATEMENT OF FACTS**

19.    On January 29, 2026, President Trump, his sons Donald and Eric Trump, and the Trump Organization, filed a federal lawsuit against the IRS and Treasury, seeking at least $10 billion in damages arising from the 2019 unauthorized disclosure of Trump's tax returns by a former government contractor named Charles Littlejohn. Compl., *Trump v. IRS*, No. 26-cv-20609, ECF 1 (S.D. Fla. Jan. 26, 2026).

20.    After Littlejohn made these and other disclosures of tax information, various parties sued him, his employer, the IRS, and Treasury for damages under 26 U.S.C. § 7431, which has a two-year statute of limitations. *Trump*, 2026 WL 2015525 at *2. Judge Williams noted that "[i]n every case naming the government as a defendant, the DOJ engaged in a vigorous defense." *Id*.

21.    On April 17, 2026, three days before the Defendants' answer was due in the case, President Trump and his co-plaintiffs filed a Consent Motion for a 90-day extension of time for the Defendants to move to dismiss the case or to file a responsive pleading "while the Parties engage[d] in discussions designed to resolve this matter and avoid protracted litigation." *Trump*, 2026 WL 2015525 at *3 (quoting DE 40 at 2). The motion stated that Trump's counsel Daniel Epstein had conferred with counsel for the Defendants, but that attorney was not identified. *Id*. at 6. No attorney for Defendants filed a notice of appearance in the case and no party filed any pleadings in it until President Trump and his co-plaintiffs filed a notice of dismissal. *Id.*

22.    Due to the highly unusual posture of the suit—brought by a sitting President against

Executive Branch agencies under his control—the court[3] *sua sponte* ordered the parties to brief whether the matter presented a "Case" or "Controversy" under Article III of the Constitution. *Id*. To help resolve that question, the court also appointed *amici* to submit arguments on the justiciability of the suit by May 21, *id*., and it scheduled a May 27, 2026 hearing to address these threshold issues.

23.    *Amici,* including CREW, identified numerous threshold justiciability issues that would prevent the suit from advancing. Among them, the court-appointed *amici* argued that the suit presented substantial Article III subject matter jurisdiction concerns because of a lack of adversity between a sitting president seeking monetary damages for alleged harm to his personal interests and executive agencies that he controls.

24.    In addition, they argued, the claims asserted in *Trump v. IRS* were subject to numerous other obvious threshold defenses, many of which DOJ had raised in similar cases involving tax returns leaked by Charles Littlejohn. For example, the *Trump* plaintiffs' claims were also time barred because they had notice of the leaked returns more than two years before the filing of the suit. *See* 5 U.S.C. § 552a(g)(5). And they failed to adequately plead actual damages. *See* 26 U.S.C. § 7431(c).

25.    On May 18, 2026, prior to the scheduled May 27 hearing on justiciability, the *Trump* plaintiffs filed a Notice of Voluntary Dismissal. *Trump*, 2026 WL 2015525 at *3. Subsequently, Acting Attorney General Todd Blanche announced that a settlement agreement on behalf of the government with the *Trump* plaintiffs had been reached, committing the government to provide $1.776 billion in taxpayer money drawn from the Treasury's Judgment Fund to a so-called "Anti-Weaponization Fund" aimed at compensating persons who had been targeted "by

---

[3] When referring to the "court" in this section, Plaintiff refers to the court presiding over the *Trump v. IRS* case.

Democrat elected officials, political and career federal employees, contractors, and agents" for "unlawful political, personal, and/or ideological reasons." May 18, 2026 Agreement, ¶ II.C.

26. Daniel Z. Epstein signed the settlement agreement on behalf of the plaintiffs. Alejandro Brito was also listed as counsel to the Plaintiffs. Stanley E. Woodward, Jr., Associate Attorney General and Frank J. Bisignano, the Chief Executive Officer of the IRS, signed the agreement on behalf of the federal Defendants.

27. In a later addendum to the Agreement, referred to by the court as the "Release Order," *Trump*, 2026 WL 2015525 at *4, Acting Attorney General Blanche agreed on behalf of the federal government to release President Trump, his family, and his affiliates from any claims, "whether known or unknown," that could have been asserted by Defendants against them with respect to (1) any matters that were raised or could have been raised in the Case or the Pending Agency Claims; (2) Lawfare and/or Weaponization; or (3) any matters currently pending or that could be pending (including tax returns filed before the Effective Date) before Defendants or other agencies or departments." May 19, 2026 Addendum, ¶ C.

28. Facing substantial political and public pressure, Acting Attorney General Blanche subsequently stated that the DOJ would abandon implementation of the $1.776 billion slush fund, but that it would adhere to the terms of the May 19, 2026 immunity Addendum.

29. In her July 13, 2026 opinion, Judge Williams excoriated the conduct of the parties and their attorneys in *Trump v. IRS*, making the factual findings, legal conclusions and orders summarized above.

## STATUTORY FRAMEWORK

30. Agencies shall grant requesters' requests for expedited processing of their FOIA requests when they demonstrate "compelling need." 5 U.S.C. § 552(a)(6)(E)(i)(I). "Compelling

need" requires the requester to show that they are "a person primarily engaged in disseminating information" with an urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

31.    A determination of whether to provide expedited processing shall be made and notice of the determination shall be provided to the person making the request within 10 days after the date of the request. 5 U.S.C. § 552(a)(6)(E)(ii)(I).

32.    Agency action to deny a request for expedited processing pursuant to this subparagraph, and failure by an agency to respond in a timely manner to such a request, is subject to judicial review. 5 U.S.C. § 552(a)(6)(E)(iii).

33.    Upon receipt of a FOIA request, an agency must make a determination whether to comply with it and notify the requester of that determination within twenty days of receipt of a request, excluding Saturdays, Sundays, and legal public holidays. 5 U.S.C. § 552(a)(6)(A)(i).

34.    Moreover, the FOIA provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

35.    After a FOIA request is received by an agency, it must "make reasonable efforts to search for the records." 5 U.S.C. § 552(a)(3)(C). If the agency identifies any responsive records, the agency must make them "promptly available." *Id.*

36.    If an agency fails to make a determination within the prescribed time frame, requesters are deemed to have exhausted their administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i).

**CREW'S FOIA Requests**

37.     On May 12, 2026, CREW filed five substantially similar FOIA requests with DOJ, Treasury, and IRS in which it requested the following records from December 1, 2025 to the present:

1. All communications to or from President Donald J. Trump, Donald J. Trump Jr., Eric Trump, The Trump Organization LLC, or any attorney, agent, or representative purporting to act on behalf of any of the foregoing, including but not limited to Alejandro Brito, Ian Michael Corp, Daniel Z. Epstein, and the law firms Brito PLLC (@britopllc.com) and Epstein & Co. LLC (@epsteinco.co), concerning *Trump v. Internal Revenue Service*, No. 1:26-cv-20609 (S.D. Fla.), the underlying claims, the disclosure of tax return information by Booz Allen Hamilton contractor Charles Littlejohn, or any potential resolution, settlement, compromise, or disposition of the case.

2. Any agreement, settlement, compromise under 26 U.S.C. § 7122, stipulation of dismissal, release, or other document resolving or purporting to resolve, in whole or in part, *Trump v. Internal Revenue Service*, No. 1:26-cv-20609 (S.D. Fla.), together with any drafts of such documents exchanged between or among the DOJ, the Internal Revenue Service ("IRS"), the Department of the Treasury ("Treasury"), and the plaintiffs or their counsel.

38.     CREW's FOIA requests stated that, because litigation is reasonably foreseeable, the agencies should institute an agency-wide preservation hold on all documents potentially responsive to the request.

39.     CREW's FOIA requests asked the agencies to search for responsive records regardless of format, medium, or physical characteristics.

40.     In each request, CREW sought a fee waiver in accordance with 5 U.S.C. § 552(a)(4)(A) and agency regulations.

41.     CREW stated that the subject of the FOIA requests concerns the operations of the federal government and that the disclosures likely will contribute to a better understanding of government procedures and public policy in a significant way. The request for a fee waiver stated that the request was primarily and fundamentally for non-commercial purposes. CREW's requests stated that CREW should not be charged search or review fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) because it qualifies as a member of the news media. CREW routinely

disseminates information obtained through FOIA and stated that it intended to do so in this case.

42.     CREW also requested expedited processing of the requests pursuant to 5 U.S.C. § 552 and agency regulations. CREW stated that it was entitled to expedited processing because there is an "urgency to inform the public concerning actual or alleged Federal Government Activity" and because CREW is "primarily engaged in disseminating information." 5 U.S.C. § 552(a)(6)(E)(v)(II).

43.     In its requests to DOJ, CREW also requested expedited processing because the request presented a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence." 28 C.F.R. § 16.5(e)(1)(iv).

44.     CREW's requests explained that it is primarily engaged in disseminating information to the public through its widely-read website, blogposts and reports made public that frequently rely on government records obtained through FOIA.

45.     CREW's requests further explained that the request concerned a matter of current exigency to the American public, that the consequences of delaying a response would compromise a significant interest and that the request concerns federal government activity.

### Department of Justice

46.     On May 12, 2026, CREW filed a federal Freedom of Information Act request with three components of the Department of Justice: the Civil Division ("DOJ Civil"), the Executive Office of United States Attorneys ("EOUSA"), and the Office of Information Privacy ("OIP"). A copy of these FOIA requests is attached as Exhibit A.

47.     On May 22, 2026, DOJ Civil acknowledged receipt of the request, assigned it number 145-FOI-26-22777, granted the request for expedited processing and stated that it had

not yet decided CREW's request for a fee waiver. It also directed CREW to a press release referring to the federal case filed in Florida and a link to the settlement agreement that purported to resolve that lawsuit.

48.    On May 12, 2026, EOUSA acknowledged receipt of CREW's FOIA request and assigned it number EOUSA-2026-003489.

49.    By letter dated May 13, 2026, EOUSA invoked "unusual circumstances" under 5 U.S.C. § 552(a)(6)(B)(i)-(iii) granting the agency 10 additional days to respond to CREW's request and clarified it had not yet decided CREW's request for a fee waiver.

50.    By letter dated May 22, 2026, EOUSA denied CREW's request for expedited processing.

51.    By letter dated May 22, 2026, OIP acknowledged receipt of CREW's FOIA request, assigned it number FOIA-2026-03128 and granted its request for expedited processing. Despite granting expedited processing, the letter invoked "unusual circumstances" under 5 U.S.C. § 552(a)(6)(B)(i)-(iii) granting the agency 10 additional days to respond to CREW's request. The letter further clarified it had not yet decided CREW's request for a fee waiver.

52.    As of the date of filing this Complaint, none of the three components of Defendant DOJ have determined whether to comply with CREW's May 12, 2026 request.

53.    More than twenty days plus an additional ten working days have passed since CREW submitted its requests, and Defendant DOJ has therefore failed to comply with 5 U.S.C. § 552(a)(6)(A)(i), 552(a)(6)(B).

54.    As a result, CREW has constructively exhausted its administrative remedies, 5 U.S.C. § 552(a)(6)(C)(i), and seeks immediate judicial review.

**Department of the Treasury**

12

55.     On May 12, 2026, CREW filed a FOIA request with Defendant Treasury. A copy of this FOIA request is attached as Exhibit B.

56.     On May 14, 2026, Defendant Treasury acknowledged receipt of the request, and assigned it number 2026-FOIA-01160. It did not decide the request for expedited processing or CREW's request for a fee waiver.

57.     As of the date of filing this Complaint, Defendant Treasury has not determined whether to comply with CREW's May 12, 2026 request.

58.     More than ten days have passed since the request for expedited processing was made. Treasury has therefore failed to comply with 5 U.S.C. § 552(a)(6)(e)(ii)(1).

59.     More than twenty days have passed since CREW submitted its request, and Defendant Treasury has therefore failed to comply with 5 U.S.C. § 552(a)(6)(A)(i).

60.     As a result, CREW has constructively exhausted its administrative remedies, 5 U.S.C. § 552(a)(6)(C)(i), and seeks immediate judicial review.

### Internal Revenue Service

61.     On May 12, 2026, CREW filed a FOIA request with Defendant IRS. A copy of this FOIA request is attached as Exhibit C.

62.     On May 12, 2026, Defendant IRS acknowledged receipt of the request and assigned it number 2026-10879.

63.     By letter dated May 13, 2026, Defendant IRS acknowledged receipt of the request again and granted CREW's request for expedited process and for a waiver of fees. Despite granting expedited processing, the letter invoked "unusual circumstances" under 5 U.S.C. § 552(a)(6)(B)(i)-(iii) granting the agency 10 additional days to respond to CREW's request, though the letter further stated that IRS would not be able to make a determination by

the extended deadline.

64.     As of the date of filing this Complaint, Defendant IRS has not determined whether to comply with CREW's May 12, 2026 request.

65.     More than twenty days plus an additional ten working days have passed since CREW submitted its request, and Defendant IRS has therefore failed to comply with 5 U.S.C. §§ 552(a)(6)(A)(i), 552(a)(6)(B).

66.     As a result, CREW has constructively exhausted its administrative remedies, 5 U.S.C. § 552(a)(6)(C)(i), and seeks immediate judicial review.

## PLAINTIFF'S CLAIMS

### COUNT I
### Denial of Expedited Processing
### as to Defendant DOJ

67.     Plaintiff repeats and realleges paragraphs 1-66 as if they were fully set forth herein.

68.     Pursuant to the FOIA and applicable agency regulations, on May 12, 2026, CREW properly sought expedited processing of the FOIA requests it filed with the DOJ. DOJ components Civil Division and OIP granted CREW's request for expedited processing. Component EOUSA denied CREW's request for expedited processing.

69.     CREW's request to EOUSA satisfied the standard set forth in 5 U.S.C. § 552(a)(6)(E). As explained above, CREW demonstrated that it had a compelling need for the records requested because it is an organization primarily engaged in disseminating information and showed an urgency to inform the public concerning actual or alleged Federal Government activity.

70.     CREW also satisfied the standard for expedited processing set forth in agency regulations. CREW, an organization primarily engaged in disseminating information,

14

demonstrated an "urgency to inform the public about an actual or alleged Federal Government activity," and that the records sought involved a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence." 28 C.F.R. § 16.5(e)(1)(ii), (iv).

71.      EOUSA violated 5 U.S.C. § 552(a)(6)(E) and agency regulations by denying CREW's request for expedited processing.

## COUNT II
### Constructive Denial of Expedited Processing
### as to Defendant Treasury

72.      Plaintiff repeats and realleges paragraphs 1-66 as if they were fully set forth herein.

73.      Pursuant to the FOIA and applicable agency regulations, on May 12, 2026, CREW sought expedited processing of the FOIA request that it filed with Defendant Treasury.

74.      CREW's request to Defendant Treasury satisfied the standard set forth in 5 U.S.C. § 552(a)(6)(E) and agency regulations. As explained above, CREW demonstrated that it had a compelling need for the records requested because it is an organization primarily engaged in disseminating information and showed an urgency to inform the public about actual or alleged Federal Government activity. 31 C.F.R § 1.4(e)

75.      Defendant Treasury violated 5 U.S.C. § 552(a)(6)(E) and agency regulations by constructively denying CREW's request for expedited processing.

## COUNT III
### Unlawful Withholding of Records
### as to All Defendants

76.      Plaintiff repeats and realleges paragraphs 1-66 as if they were fully set forth herein.

77.      In its May 12, 2026 FOIA requests, CREW properly sought records within the custody and control of each Defendant.

78.    Defendants wrongfully withheld agency records requested by CREW by failing to make determinations on CREW's requests within the statutorily prescribed time period of 20 business days, as required by 5 U.S.C. § 552(a)(6)(A), or within ten working days thereafter, and by continuing to withhold documents that are non-exempt and responsive to CREW's FOIA requests.

79.    Because Defendants have failed to comply with the applicable time-limit provisions of FOIA, CREW is deemed to have exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i) and is now entitled to injunctive and declaratory relief requiring Defendants to process its FOIA requests and promptly release all non-exempt records.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court:

(1)    Declare CREW is entitled to the immediate processing and disclosure of the requested records to it;

(2)    Declare CREW is entitled to expedited processing of the request filed with EOUSA and Treasury;

(3)    Order the Defendants to preserve all records, in whatever form they exist, potentially responsive to CREW's requests prior to and during the processing of its requests;

(4)    Order Defendants to immediately process and disclose all responsive records to CREW;

(5)    Order Defendants to grant CREW's requests for fee waivers;

(6)    Provide for expeditious processing of this action;

(7)    Retain jurisdiction over this action to ensure that no agency records are wrongfully

16

withheld and ensure compliance with this Court's orders;

(8)     Award CREW attorneys' fees and costs pursuant to 5 U.S.C. § 552(a)(4)(F)(i); and

(9)     Grant any other such relief that this Court may deem just and proper.


Dated: July 27, 2026                                  Respectfully submitted,

                                                      *s/ Jeffrey S. Gutman*
                                                      Jeffrey S. Gutman (D.C. Bar No. 416954)
                                                      1712 Hobart Street NW
                                                      Washington, DC 20009
                                                      (202) 631-5129
                                                      jsgutmandc@gmail.com

                                                      *s/ Kayvan Farchadi*
                                                      Kayvan Farchadi (D.C. Bar No. 1672753)
                                                      Jonathan E. Maier (D.C. Bar No. 1013857)
                                                      CITIZENS FOR RESPONSIBILITY
                                                      AND ETHICS IN WASHINGTON
                                                      P.O. Box 14596
                                                      Washington, DC 20044
                                                      (202) 408-5565
                                                      kfarchadi@citizensforethics.org
                                                      jmaier@citizensforethics.org

                                                      *Counsel for Plaintiff*